STATE OF MAINE                          SUPERIOR COURT
KENNEBEC. SS.                           CIVIL ACTION
                                        DOCKET NO.: AP-04-26

PORTLAND SURGERY CENTER, LLC.,

        Petitioner

    V.                                  **DECISION ON APPEAL**

COMMISSIONER, MAINE DEPARTMENT OF
HUMAN SERVICES,

        Respondent[1]

This matter comes before the court for review of final agency action pursuant to

Maine Rules of Civil Procedure 80C and 5 M.R.S.A. §11001 Et Seq. The appeal is from

the decision of the Commissioner of the Department of Human Services

("Commissioner") and the Bureau of Medical Services Division ("Bureau") denying

issuance of a certificate of need ("CON") for Portland Surgery Center, LLC ("PSC") to

open a proposed new ambulatory surgical center in Cumberland County. After the initial

decision by the Bureau that this project required a CON, a full application was filed and

processed in accordance with the statute, including public hearings, etc. After passing

through all these procedural gates, the Commissioner's final decision dated April 5, 2004

was to deny the request for issuance of a CON. PSC appeals only from the Bureau's

initial determination that they were subject to CON review and certification in the first

place. The petition will be denied.

                            Background

Given the limited issue before the court, the portions of the record that must be

considered are similarly limited. A more detailed procedural history is set forth in this

court's order dated September 16, 2004, which is incorporated herein. However, for

---

[1] While this matter has been pending, the Department's name has been changed to
"Department of Health and Human Services".

purposes of this decision on the merits, the following record and procedural record and background will suffice.

Sometime in 2003, PSC filed a "Letter of Non-Applicability of Certificate of Need for Proposed Ambulatory Surgical Facility" (record tab 1). The letter set forth the parties who would be involved in the proposed ambulatory surgical facility ("ASF"), services which would be proposed at the facility and estimate of capital costs ($2,123,196-includes $1,190,000 for equipment and $896,436 for lease hold improvements) and estimated third year operating expenses of $2,991,204. The letter ended by asking the Department for its determination that a CON was not required. There followed one or more meetings between the Bureau staff and counsel for PSC, following which the Bureau notified counsel of its conclusion that the new ASF would require a CON by letter dated March 10, 2003. By letter dated April 2, 2003, the PSC group sent a letter of intent to file an application for a CON in light of the Bureau's determination "that the Certificate of Need Program applies to this proposal". PSC pursued the jurisdictional question of whether they were required to make such CON application, but without resolution. (See this court's order of September 16, 2004 for background). The issue remains for adjudication and, as noted, is the only issue before the court on this appeal.[2]

## Discussion

In 1978, spurred on by federal legislation in 1974, our Legislature enacted the original Certificate of Need legislation. The legislation was based on findings "that unnecessary construction or modification of healthcare facilities and duplication of health services are substantial factors in the cost of healthcare and the ability of the public to obtain necessary medical services." 22 M.R.SA. §327(1). The purposes of the legislation are varied, but emphasize the importance that healthcare be cost effective and available, while balancing interests of competition and regulation. Prior to 1998, there would have been no question under the CON statutes in existence then that a project such as the one proposed by PSC would be subject to CON review. This is because the statute

_____

[2] At one point PSC withdrew an interim appeal to the Supreme Judicial Court on this issue. This decision may have been made in light of a moratorium on CON applications, which went into effect shortly after PSC began their process. For whatever reason, the issue is still properly before the court at this time.

2

anticipated that any and all new facilities or services would be subject to such review. However, in 1998 the Legislature repealed and replaced this all-encompassing provision, and enacted a set of financial thresholds below which CON review would not be required. As they existed at the time of PSC application,[3] §329 required a certificate of need from the Department for;

   (1) "any transfer of ownership or acquisition under lease...or any acquisition of control over healthcare facility under lease..."

   (2) "Acquisitions of major medical equipment with the cost in the aggregate of $1,200,000 or more."

   (3) "The obligation by or on behalf of a healthcare facility of any capital expenditure of $2,400,000 or more."

   (4) "The offering or development of any new health service. For purposes of this section, "new health service" includes only the following:

   A. the obligation of any capital expenditures by or on behalf of any healthcare facility of $110,000 or more that is associated with the addition of a health service that was not offered on a regular basis by or on behalf of the healthcare facility within the twelve month period prior to the time the services would be offered; or

   B. the addition of a health service that is to be offered by or on behalf of a healthcare facility that was not offered on a regular basis by or on behalf of the health care facility within the twelve month period prior to the time the services would be offered and that, for the third fiscal year of operation, including a partial first year, involving addition of that service, is projected to entail incremental annual operating costs directly attributable to the addition of a new health service of at least $400,000.

The Bureau argues that the PSC project falls within the requirement of a CON pursuant to subsection 4-new health service. PSC argues that it is subsections 2 and/or 3 that should apply exclusively to their application and, therefore, no CON review is required because their projected investment and expenses fall below the threshold.

Section 329 draws a distinction between new facilities - which could be considered the "bricks and mortar" side of healthcare - and health services - which is what happens inside of the buildings to provide medical diagnosis, care, etc. Therefore, any proposed change could involve a change in the facility with no change in the health service (e.g. a clinic moving to a new building with no change in the basic patient offerings). Or an existing facility proposing a new service but with no or little change in the fiscal plant (e.g. a new neonatal or cardiac unit within the existing hospital). Or, a

---

[3] The Legislature has subsequently amended and recodified the pertinent statutes but not in a way which effects the present appeal.

new start-up project designed to provide new services from within a new facility. Application of the subsections of §329 to the first two examples is fairly straightforward. However, application of those provisions to the third example – which is the PSC proposal - is ambiguous. In the case of the new facility with no change in existing services, subsections 2 or 3 and their threshold amounts would seem to apply. By the same token, in the case of a new health service being offered at a existing facility, the threshold amounts of subsection 4(A) or (B) would apply. But in the "new-new" situation involving both the new facility and new services it is unclear what applies. Subsections 2 and 3? Subsections 4(A) (B)? Both?

The petitioner argues that only the threshold amounts of subsections 2 and 3 should apply, and since the equipment and capital expenditure investments proposed are beneath the threshold amounts set forth, no CON review is necessary. PSC gets to this point by a process of elimination. The petitioners do not argue that their "new-new" project should be exempt from all CON review[4], but PSC rejects the Bureau's interpretation that subsection 4 is applicable because of the wording in the subsections that they apply to the "addition of a health service" not regularly offered by the facility within the preceding twelve months. PSC says that if there was no existing facility or existing services, then there was nothing to which a new health service could be "added". Therefore, subsection 4 does not apply. At first blush, this semantic argument appears to make sense, even if its arithmetic is questionable (0+1=1, not 0). But on further reflection, it could just as well be argued that a proposed new facility offering new services by definition could not have offered those services during the preceding twelve months. Therefore, any service being proposed is an "additional" service to what it was providing before (zero) and the threshold amounts of subsection 4 would be applicable.

It simply is not clear what the Legislature intended with regard to treatment of the "new-new" proposed health facility/service project. The legislative offers little help. However, when the Legislature made the amendment to include the threshold amounts in 1998, it did not amend its original findings and purposes of the CON legislation, key among which is the regulation of new healthcare expenditures to control mushrooming healthcare costs. Given that purpose, it is fair to accept the Bureau's interpretation,

---

[4] The respondent persistently misstates the petitioner's position on this point in its brief.

which would provide CON review for a greater number of start-up service providers. PSC's interpretation-that only the facility capital expenditure and medical equipment thresholds apply-would illogically give the true new comers to the field a better chance of avoiding CON review than an existing facility with a proven track record which wishes to add the same services to its repertoire. In summary, although the statute is ambiguous and interpretation is not without question, the Bureau's interpretation of §329 as it applies to PSC's application is more consistent with the stated Legislative purpose of the statutory procedure and more logical within that framework.

Finally, it is often argued in cases of review of agency action that the agency's determination of a statute it administers "is entitled to great deference and will be upheld "unless the statute plainly compels a contrary result."" Centamore v. Department of Human Services, 664 A.2nd 369, 371-72 (Me. 1995). This direction is sometimes added to the end of a brief, almost as a makeweight argument. However, the present case illustrates the importance of such deference to the administering agency where the statute is ambiguous and clearly does not compel a contrary result. The Bureau has worked with this statute for over twenty-five years in it's various iterations and the staff stands in the best chance to divine the true legislative intent.

In summary, the court concludes that in the Bureau's interpretation of §329, and its determination that the PSC project is subject to CON review, the Bureau and Commissioner did not err as a matter of law or abuse their discretion. Therefore, the entry will be: Appeal denied. Remanded to the Department of Health and Human Services.

DATED: 3/8/05

S. Kirk Studstrup
Justice, Maine Superior Court

Date Filed ___5/4/04___ ___Kennebec___ Docket No. ___AP04-26___
County

Action ___Petition for Review___
80C

Joseph Kozak, Esq. (Amicus Curiae)
Michael Seitzinger, Esq.
160 Capitol St
Augusta Maine 04330

Janine Keck Massey, AAG
6 State House Station
Augusta, Maine 04333-0006 (DHS)

___Portland Surgery Center, LLC___ vs. ___Commissioner, Department of Human Servic___

**Plaintiff's Attorney**

Gregory A. Brodek, Esq.
88 Hammond St., Suite 500
Bangor, maine 04401

Michael Gottfried, Esq.

**Defendant's Attorney**

Sara Gagne Holmes Esq.
PO Box 1058
Augusta Maine 04332

Robert Frank, Esq. (Maine Medical)
Two Twin City Center
Suite 402
Portland ME 04112-0126

| Date of Entry | |
|---|---|
| 5/4/04 | Petition for Review, filed. s/Brodek, Esq. |
| | Service List, filed. s/Brodek, Esq. |
| 5/10/04 | Appearance and Statement of Position, filed. s/Holmes, Esq. |
| 5/17/04 | Appearance and Statement of Position by Maine Medical Center, filed. s/R. Frank, Esq. (Maine Medical) |
| 5/24/04 | Entry of Appearance, filed. s/Massey, AAG |
| | Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment with Incorporated Memorandum of Law and Request for Hearing, fil Massey, AAG |
| | Respondent's Statement of Material Fact, filed. s/Massey, AAG (attached exhibits A,B,C,D,E) |
| | Proposed Order, filed. |
| 6/3/04 | Certification of Record, filed. s/Massey, AAG **(Index 1-78, tapes also. In in vault)** |
| 6/11/04 | Petitioner's Opposition to Respondent's Motion to Dismiss, or Alternativ filed. s/Brodeck, Esq. |
| | Motion for Summary Judgment with Incorporated Memorandum of Law, filed. s/Brodeck, Esq. |
| | Request for Hearing, filed. s/Brodeck, Esq. |
| 6/17/04 | Respondent's Reply to Petitioner's Opposition to Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, filed. s/Massey, AAG (attached exhibit A) |
| 6/29/04 | Petitioner's Motion for Leave to File a Sur-Reply, filed. s/Brodek, Esq. |
| | Petitioner's SUr-Reply in Further Support of its Opposition to Respondents Motion to Dismiss or Alternatively Motion for Summary Judgment with In-corporated memorandum of law and Request for Hearing, filed. s/Brodek, Es |
| 7/12/04 | Petitioner's Assented-To Motion for Admission Pro Hac Vice, filed. s/Brod Esq. |
| | Certificate of Service, filed. |
| | Proposed Order, filed. |